# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS SOTO-LOPEZ,<br><br>                             Petitioner,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>                             Defendant. | Case No. 07cr3475 - IEG<br>related to 10cv1852 - IEG<br><br>**ORDER DENYING MOTION TO VACATE SENTENCE**<br><br>[Doc. No. 38] |

Presently before the Court is a motion brought by Petitioner Carlos Soto-Lopez pursuant to 28 U.S.C. § 2255 to vacate his sentence. For the reasons discussed herein, the Court **DENIES** Petitioner's motion.

## BACKGROUND

On or around October 17, 2007, the Government filed a complaint in this district alleging Petitioner Carlos Soto-Lopez illegally re-entered the United States in violation of 8 U.S.C. § 1326. The case was assigned case number 07-CR-3119-IEG. (See Def.'s Response, Attach. 1.) Federal Defenders, Petitioner's court-appointed counsel, assigned the case to Amber Baylor. (Pet.'s Mot. at 3.)

On October 29, 2007, the Government offered Petitioner a fast-track plea deal. (See Pet.'s Mot., App. A.) Among other things, acceptance of the deal would require Petitioner to waive indictment and agree to plead guilty quickly. (Id.) In exchange, the Government would give

Petitioner a "charge bargain," meaning he would plead guilty to an information charging him with three counts of illegal entry, in violation of 8 U.S.C. § 1325(a), and the Government would recommend to the Court that Petitioner receive a sentence of no greater than 48 months. (Id.)

On November 15, 2007, Petitioner waived indictment. (Id. at 3-4.) The same day, pursuant to the anticipated plea agreement, an information was filed charging Petitioner with three counts of illegal entry in violation of 8 U.S.C. § 1325. (Id.) Petitioner entered a not guilty plea, and the change of plea hearing was continued. (Id.)

In late November, 2007, Petitioner heard from another inmate that an attorney named Christian De Olivas could possibly get him a better deal. (Id. at 4.) Petitioner met with Mr. De Olivas and became dissatisfied with the 48-month offer Ms. Baylor had procured for him, believing he could get a lower sentence. (Id.) Based on Mr. De Olivas' representation that he would be able to obtain a 24 or 30-month deal for him, Petitioner retained Mr. De Olivas on December 4, 2007 and agreed to pay him $4,000. (Id.) Soon thereafter, Mr. De Olivas substituted in as Petitioner's attorney, thereby relieving Federal Defenders. (Id.) Based on the advice of Mr. De Olivas, Petitioner rejected the fast-track plea deal. (Id.)

On December 27, 2007, Petitioner was indicted in case number 07-CR-3475-IEG on a single count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. (See Def.'s Response, Attach. 2.) On January 11, 2008, the information in case 07-CR-3119-IEG was dismissed and petitioner pleaded not guilty in the present case. (Def.'s Response at 2.) On June, 16, 2008, Petitioner pleaded guilty to the indictment without a plea agreement. (See Def.'s Response, Attach. 2.) Sentencing was set for September 15, 2008. (Def.'s Response at 2.)

However, on August 27, 2008, the Standing Committee on Discipline for the Southern District of California ("Standing Committee") filed a petition requiring Petitioner's attorney, Mr. De Olivas, to show cause why he should not be suspended or disbarred from practicing in the district due to unprofessional conduct. (Pet.'s Mot. at 5.) On September 24, 2008, Mr. De Olivas was disciplined and suspended from practice within the district for a year. (Def.'s Response at 2.) The order required Mr. De Olivas to inform his clients of his suspension and offer them the opportunity to retain other counsel. (Id.) If the client wished for Mr. De Olivas to continue the

1  representation, then he would be permitted to do so at the discretion of the assigned district court,
2  and only if Mr. De Olivas associated with experienced counsel. (See Pet.'s Mot., App. B.) Mr. De
3  Olivas never notified Petitioner of the disciplinary action. (Pet.'s Mot. at 5.) Rather, on October 5,
4  2008, Mr. De Olivas filed an ex-parte motion to substitute out as Petitioner's attorney. (Id.) On
5  October 9, 2008, this Court granted Petitioner's motion to substitute counsel and reappointed
6  Federal Defenders. (Def.'s Response at 3.)

7        On January 7, 2009, Petitioner filed a sentencing memorandum requesting that the Court
8  impose a sentence of time served. (Def.'s Response at 3.) He also recommended that, if the Court
9  did not impose a time served sentence, the Court impose a sentence of no more than 48 months.
10 (Id.) The basis of this request was because Petitioner had been offered a 48-month plea agreement,
11 but rejected it upon the advice of his retained attorney. (Id.)

12       On January 12, 2009, at the sentencing hearing, Petitioner argued that the Court should
13 impose a lower sentence because of the circumstances that resulted in his turning down a 48-month
14 sentence. (Id.) The Court informed Petitioner that it was willing to allow him to withdraw his
15 guilty plea and Petitioner declined the Court's offer. (See Def.'s Response, Attach. 3.) The
16 Government recommended that the Court sentence Petitioner to the low end of the guideline range
17 of 77 months. (Def.'s Response at 3.) The Government stated that 77 months was an appropriate
18 and reasonable sentence in light of Petitioner's prior record, which included four prior felony drug
19 convictions, seven prior deportations, several grants of probation and a significant prison sentence
20 from his drug convictions. (See Def.'s Response, Attach. 3.) The Court agreed with the
21 Government's assessment. (Def.'s Response at 4.) Accordingly, the Court sentenced Petitioner to
22 77 months in custody, 3 years of supervised release, and waived the penalty assessment. (See
23 Def.'s Response, Attach. 3.)

24       Petitioner appealed his sentence, arguing in part that the Court should have imposed a
25 lower sentence because Mr. De Olivas had advised Petitioner to reject the fast-track plea offer.
26 (See Def.'s Mot. at 5.) On January 7, 2010, the Ninth Circuit affirmed his sentence. (Id.)

27       On September 3, 2010, Petitioner filed the present motion to vacate his sentence based
28 upon a claim of ineffective assistance of counsel. (Doc. No. 38.) The Government filed a response

and Petitioner filed a reply. (Doc. Nos. 45, 46.)

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the court "to vacate, set aside, or correct the sentence" on the grounds that such sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law . . . ." The Sixth Amendment to the United States Constitution guarantees the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim that his trial counsel rendered ineffective assistance, a petitioner must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Id. at 688-93. There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Id. at 689, and Petitioner bears the burden of establishing both prongs of the standard, United States v. Quintero-Barraza, 57 F.3d 836 (9th Cir. 1995), amended and superseded by, 78 F.3d 1344 (9th Cir. 1995); United States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991). The "decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches." United States v. Zelinsky, 689 F.2d 435, 438 (1982). Accordingly, the Strickland two-prong test applies to claims of ineffective assistance of counsel arising from the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Under the performance prong of the Strickland test, the court does not focus on whether counsel's advice was right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Counsel's performance is deficient when his or her advice to defendant was so incorrect and so insufficient that it undermined defendant's ability to make an intelligent decision about whether to accept the offer. Turner, 281 F.3d at 881 (citation omitted).

Under the prejudice prong, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. If a habeas petitioner contends that counsel's deficient performance caused him to reject a plea offer,

he must demonstrate a reasonable probability that he would have accepted the plea offer had he been properly advised. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003); Turner, 281 F.3d at 879.

In this case, Petitioner maintains that he was prepared to accept the fast-track plea deal until Mr. De Olivas promised he could obtain a 24 or 30-month deal from the government, and that Mr. De Olivas knew or should have known there was no chance the Government would make such an offer, given the practices in this district and Petitioner's particular circumstances. See Pet.'s Mot. at 2. According to Petitioner, Mr. De Olivas promised he could secure a better deal "to fleece [Petitioner] out of a fee." Id. at 8. Emphasizing that Mr. De Olivas was banned from the district for unethical conduct, Petitioner contends Mr. De Olivas' advice was constitutionally deficient and resulted in prejudice. In response, the Government argues that under Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002), Petitioner has not demonstrated that Mr. De Olivas' advice was unreasonable. According to the Government, like the petitioner in Turner, Petitioner's "true complaint is that Mr. De Olivas did not possess the degree of omniscience that he now demands."

In Turner, the Ninth Circuit highlighted a class of case in which counsel's performance will be deemed deficient if counsel fails to communicate, or makes affirmative misrepresentations regarding, basic plea or sentencing information. See Turner, 281 F.3d at 880 (citing United States v. Blaylock, 20 F.3d 1458, 1466 (9th Cir. 1994) (holding counsel ineffective for failure to communicate plea offer) and United States v. Day, 969 F.2d 39, 43 (3rd. Cir. 1992) (holding counsel ineffective, among other reasons, for affirmative misrepresentation of sentence exposure)). See also Nunes v. Mueller, 350 F.3d 1045 (9th Cir. 2003) (holding counsel ineffective for failure to accurately communicate plea offer). Finding those cases distinguishable, the Ninth Circuit upheld the district court's finding that petitioner

> was adequately informed that his case could result in a death sentence given that he sat through the reading of his criminal information and the death-qualifying jury voir dire, and that he was informed of the terms of the plea offer, thought about it overnight, and decided to turn it down. Thus, [defendant] had the tools he needed to make an informed decision-the critical information and the time to think about it.

Turner, 281 F.3d at 881. The Turner court noted that "uncertainty is inherent in predicting court decisions," and counsel "cannot be required to accurately predict what the jury or court might find,

but he can be required to give the defendant the tools he needs to make an intelligent decision." Id. (citation and quotation marks omitted).

Here, like the defendant in Turner, Petitioner had the tools he needed to make an informed decision. Petitioner has acknowledged that his appointed counsel, Ms. Baylor, advised him that if he "rejected the fast-track offer, the Government would indict him for illegal re-entry and his Guideline range would be much higher than the 48 months he was then facing." Pet.'s Mot. at 4. In other words, at the time Petitioner first spoke with Mr. De Olivas, Petitioner understood the terms of the fast-track deal and the risks of rejecting the deal, including the possibility of indictment for illegal entry and a sentence in excess of 48 months. Hindsight demonstrates Mr. De Olivas' prediction—that he could get Petitioner a better deal—was inaccurate, but Petitioner has not provided any support for his contention that there was "no chance the Government would make [] an offer [for less than 48 months], given the practices in this district and Petitioner's particular circumstances." See Pet.'s Mot. at 2. Nor is there anything in the record indicating that Mr. De Olivas made any affirmative misrepresentations of law or fact or that he interfered with Petitioner's previous understanding of the potential consequences of failing to obtain a new plea deal. Accordingly, Day, Blaylock and Nunes are inapposite. Just as "uncertainty is inherent in predicting court decisions," Turner, 281 F.3d at 881, uncertainty is inherent in predicting the government's willingness to renegotiate a plea offer.

Petitioner emphasizes that Mr. De Olivas' was "banned from the district for unethical conduct," but he has not established a direct connection between Mr. De Olivas' advice and the Standing Committee's petition. The petition mentions that the Standing Committee became aware of "acts of alleged incompetence and malpractice," but states that the Standing Committee chose not to include such matters in the petition, instead limiting the petition to unprofessional conduct. See Pet.'s Mot., App. B.

Based on the foregoing, the Court concludes Petitioner has not met his burden to overcome the strong presumption that counsel's conduct fell "within the wide range of professional assistance," Strickland, 466 U.S. at 689, and **DENIES** Petitioner's motion to vacate his sentence.

///

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion to vacate his sentence.

**IT IS SO ORDERED.**

**DATED: January 19, 2011**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**