**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS SOTO-LOPEZ,<br><br>                                  Petitioner,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>                                  Respondent. | CASE NO. 07-cr-3475 – IEG<br>Related Case: 10-cv-1852 – IEG<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S MOTION TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>[Doc. No. 38] |

Presently before the Court is Petitioner Carlos Soto-Lopez ("Petitioner")'s motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.  [Doc. No. 38.]  On April 10, 2012, the Ninth Circuit reversed this Court's denial of Petitioner's motion and remanded the case with instructions for the Court to hold an evidentiary hearing and make findings of fact concerning Petitioner's allegations.  [Doc. No. 57.]  <u>United States v. Soto-Lopez</u>, 2012 U.S. App. LEXIS 7242 (9th Cir. Apr. 10, 2012).  The Court held an evidentiary hearing on Friday, July 20, 2012 and on Tuesday, July 24, 2012.

This memorandum decision constitutes the Court's findings of fact and conclusions of law.

On October 17, 2007, the Government filed a complaint in this District alleging Petitioner illegally re-entered the United States in violation of 8 U.S.C. § 1326.  [Doc. No. 45-1, Ex. 1 [Doc.

No. 1].]¹ The case was assigned case number 07-cr-3119-IEG. [Id.] Federal Defenders, Petitioner's court-appointed counsel, assigned the case to Amber Baylor. [Id. [Doc. No. 3]; Doc. No. 58-1, Declaration of Amber A. Baylor ("Baylor Decl.") ¶ 3.]

On October 29, 2007, the Government, through U.S. Attorney Joseph Orabona, offered Petitioner a fast-track plea deal. [Doc. No. 58-1 at 3-9.] Among other things, acceptance of the deal would require Petitioner to waive indictment and enter a guilty plea on or before December 17, 2007. [Id.] In exchange, the Government would give Petitioner a "charge bargain," meaning he would plead guilty to an information charging him with three counts of illegal entry, in violation of 8 U.S.C. § 1325(a), and the Government would recommend to the Court that Petitioner receive a sentence of no greater than 48 months. [Id.] Thereafter, Ms. Baylor advised Petitioner that she believed the 48-month deal was the best offer the Government would give him and that if he did not accept this offer, he would face higher penalties.² Petitioner agreed to accept the fast track plea offer.

On November 15, 2007, Petitioner waived indictment. [Doc. No. 45-1, Ex. 1 [Doc. No. 8]; Def.'s Tr. Ex. A .] The same day, pursuant to the anticipated plea agreement, an information was filed charging Petitioner with three counts of illegal entry in violation of 8 U.S.C. § 1325. [Id. [Doc. No. 6].] Petitioner entered a not guilty plea, and the change of plea hearing was continued to November 29, 2007. [Id. [Doc. No. 7].]

Sometime after signing the above waiver of indictment form, Petitioner heard from another inmate that an attorney named Christian De Olivas could possibly get him a better deal. Petitioner met with Mr. De Olivas after Mr. De Olivas approached him at the MCC. Mr. De Olivas told Petitioner that he was agreeing to a lot of time in custody and told Petitioner that he could obtain

---

¹ In this matter, some of the evidence considered by the Court consists of docket reports and docket entries from other civil and criminal cases in this District. [See, e.g., Doc. No. 45-1 Exs. 1-6; Doc. No. 58-1 at 15-38.] In addition, the Court has considered disciplinary documents that were filed with the State Bar of California and the Executive Office for Immigration Review. [Doc. No. 58-1 at 39-77.] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of these documents because they are matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

² When she was assigned to the case, Ms. Baylor reviewed Petitioner's file and determined that he had a prior aggravated felony that qualified for a sixteen-level increase under the sentencing guidelines. [Doc. No. 58-1, Baylor Decl. ¶ 4.]

1  for him a 24-month offer or at most a 30-month offer from the Government.  During this
2  conversation, Petitioner informed Mr. De Olivas that he had a prior state court conviction for drug
3  trafficking and had served two years in prison for that offense.  Mr. De Olivas told Petitioner that
4  his prior state court conviction would not count in federal court.  Petitioner was happy with what
5  Mr. De Olivas told him because the offer Mr. De Olivas said he could obtain was for half the time
6  of the 48-month fast track plea offer.

7        On November 26, 2007, Petitioner met with Ms. Baylor and told her that he thought the 48-
8  month plea offer was too much time and he wanted new counsel.  [Doc. No. 58-1, Baylor Decl. ¶
9  6.]  The amount of time in the offer was the only reason Petitioner said he wanted new
10 representation.  [Id. ¶ 7.]  On November 29, 2007, the Magistrate Judge continued the change of
11 plea hearing to December 6, 2007.  [Doc. No. 45-1, Ex. 1 [Doc. No. 9].]

12       On December 3, 2007, Petitioner signed a substitution of attorney form naming Mr. De
13 Olivas as his new attorney of record.  [Def.'s Tr. Ex. B.]  Mr. De Olivas requested from Petitioner
14 a retainer of $4,000.  Petitioner gave Mr. De Olivas his siblings' phone number, but Mr. De Olivas
15 was never paid for his services.  Petitioner hired Mr. De Olivas because he said he could obtain a
16 24- or 30-month offer and because he believed Mr. De Olivas was a good lawyer.

17       Mr. De Olivas emailed the signed substitution of attorney form to Ms. Baylor on December
18 4, 2007, [Doc. No. 58-1 at 10], and Ms. Baylor signed the form on December 6, 2007.  [Def.'s Tr.
19 Ex. B.]  On December 6, 2007, the Magistrate Judge substituted in Mr. De Olivas as Petitioner's
20 attorney of record and continued the plea hearing to December 18, 2007.  [Doc. No. 45-1, Ex. 1
21 [Doc. No. 11].]  After Petitioner retained Mr. De Olivas, they had a meeting where Mr. De Olivas
22 told him to reject the fast track plea offer.  Based on this advice and Mr. De Olivas's representation
23 that he could obtain a 24- or 30-month offer from the Government, Petitioner rejected the fast track
24 plea deal.

25       On December 27, 2007, Petitioner was indicted in the present case, 07-cr-3475-IEG, on a
26 single count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326.
27 [Doc. No. 1.]  On January 11, 2008, the information in case 07-cr-3119-IEG was dismissed, and
28 Petitioner pleaded not guilty to the indictment in the present case.  [Doc. No. 45-1, Ex. 1 [Doc. No.

1  14]; Doc. No. 4.] During this time, Mr. De Olivas continued to represent to Petitioner that he was

2  working towards obtaining a 24- or 30-month offer from the Government. On January 14, 2008,

3  Mr. De Olivas sent attorney Stephen Miller–the U.S. Attorney now assigned to Petitioner's

4  case–an email stating that Petitioner wanted to try the case unless he received a 30-month offer

5  from the Government. [Def.'s Tr. Ex. I.]

6        On June 16, 2008, Petitioner pleaded guilty to the indictment in 07-cr-3475 without a plea

7  agreement. [Doc. No. 10.] The Court set a sentencing hearing for September 15, 2008. [Id.]

8  Petitioner never saw Mr. De Olivas again after this change of plea hearing.

9        On August 27, 2008, the Standing Committee on Discipline for the Southern District of

10  California filed a petition requiring Mr. De Olivas to show cause why he should not be suspended

11  or disbarred from practicing in the district due to unprofessional conduct. See In re Attorney

12  Christian De Olivas, 08-cv-1575 (S.D. Cal. Aug. 27, 2008 [Doc. No. 1]). On September 18, 2008,

13  an amended petition was filed. [Doc. No. 38 Ex. B.] One of the allegations in the amended

14  petition was that Mr. De Olivas had been barred for 30 days from entry into the MCC as a result of

15  disruptive behavior, including refusing to cooperate with the security screening process. [Id. ¶¶

16  20-22.] Other allegations accused Mr. De Olivas of making false statements to the court and to the

17  disciplinary committee. [Id. ¶¶ 23-25, 33-38.] On September 24, 2008, Mr. De Olivas was

18  disciplined and suspended from practice within this District for a year. [See id.]

19        On October 5, 2008, Mr. De Olivas filed an ex-parte motion to withdraw as Petitioner's

20  attorney. [Doc. No. 13.] On October 9, 2008, this Court granted Petitioner's motion to substitute

21  counsel and reappointed Federal Defenders, specifically attorney Timothy Garrison. [Doc. Nos.

22  15-17.]

23        On January 7, 2009, Petitioner filed a sentencing memorandum requesting that the Court

24  impose a sentence of time served. [Doc. No. 21.] He also requested that, if the Court did not

25  impose a time served sentence, the Court impose a sentence of no more than 48 months because

26  Petitioner had been offered a 48-month plea agreement, but rejected it upon the advice of Mr. De

27  Olivas. [Id.]

28        On January 12, 2009, at the sentencing hearing, Petitioner argued that the Court should

1  impose a lower sentence because of the circumstances that resulted in his turning down a 48-month
2  offer. [Doc. No. 29 at 6-8.]  The Court informed Petitioner that it was willing to allow him to
3  withdraw his guilty plea, and Petitioner declined the Court's offer.  [Id.]  The Government
4  recommended that the Court sentence Petitioner to the low end of the guideline range of 77
5  months.  [Id. at 8.]  The Court agreed with the Government's assessment.  [Id. at 12-16.]
6  Accordingly, the Court sentenced Petitioner to 77 months in custody, 3 years of supervised release,
7  and waived the penalty assessment.  [Doc. Nos. 22-23.]

8  Petitioner appealed his sentence, arguing in part that the Court should have imposed a
9  lower sentence because Mr. De Olivas had advised Petitioner to reject the fast-track plea offer.
10 [See Doc. No. 37; Doc. No. 24.]  On January 7, 2010, the Ninth Circuit affirmed his sentence.
11 [Doc. No. 37.]  On September 3, 2010, Petitioner filed the present motion to vacate his conviction
12 and sentence pursuant to 28 U.S.C. § 2255 based upon a claim of ineffective assistance of counsel.

13 28 U.S.C. § 2255(a) authorizes the Court to "vacate, set aside or correct" a sentence of a
14 federal prisoner that "was imposed in violation of the Constitution or laws of the United States."
15 Claims for relief under § 2255 must be based on some constitutional error, jurisdictional defect, or
16 an error resulting in a "complete miscarriage of justice" or in a proceeding "inconsistent with the
17 rudimentary demands of fair procedure."  United States v. Timmreck, 441 U.S. 780, 783-84 (1979)
18 (internal quotation marks omitted).

19 "When a district court reviews a § 2255 habeas motion, '[u]nless the motion and the files
20 and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . .
21 . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of
22 law with respect thereto.'"  United States v. Withers, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting
23 28 U.S.C. § 2255(b)).  If a district court conducts an evidentiary hearing, to establish entitlement to
24 relief under § 2255, a petitioner must prove by a preponderance of the evidence that he was denied
25 a constitutional right.  See Farrow v. United States, 580 F.2d 1339, 1355 (9th Cir. 1978); see also
26 Hearn v. United States, 194 F.2d 647, 649 (7th Cir. 1952).  Therefore, to succeed on his motion,
27 Petitioner must prove by a preponderance of the evidence that he was provided with ineffective
28 assistance of counsel in violation of his Sixth Amendment rights.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); see also Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) ("'[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.'"). To prevail on a claim that his trial counsel rendered ineffective assistance, a petitioner must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688-93 (1984).

Under the performance prong of the Strickland test, the Court does not focus on whether counsel's advice was right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases. Turner, 281 F.3d at 881 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689.

To prove ineffective assistance during the plea phase of a prosecution, a petitioner must demonstrate "'gross error'" on the part of counsel. Turner, 281 F.3d at 880 (quoting McMann, 397 U.S. at 772). In other words, a petitioner must demonstrate the advice he received was so incorrect and so insufficient that it undermined petitioner's ability to make an intelligent decision about whether to accept the offer. Id. at 881 (citation omitted). "Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." Id.; see also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("[C]ounsel have a duty to supply criminal defendants with necessary and accurate information. Though, a mere inaccurate prediction, standing alone, would not constitute ineffective assistance . . . .").

Under the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, the Court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a habeas petitioner contends that his counsel's deficient performance caused him to reject a plea offer, he:

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S. Ct. at 1385.

A petitioner must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel. Strickland, 466 U.S. at 687; United States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991). "Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" Gonzalez v. Wong, 667 F.3d 965, 987 (9th Cir. 2011). The Supreme Court has recognized that "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).

In this case, Petitioner has met his burden of proof with respect to the deficient performance prong of the Strickland test. Mr. De Olivas advised Petitioner to reject the Government's 48-month fast track plea offer, and Mr. De Olivas told Petitioner that he could obtain a 24- or 30-month offer from the Government.[3] The Ninth Circuit has explained that an inaccurate prediction does not constitute ineffective assistance of counsel. Iaea, 800 F.2d at 865; Turner, 281 F.3d at 881. However, the Ninth Circuit on appeal in this case clarified that the prediction must be "based on a sincere trial strategy." Soto-Lopez, 2012 U.S. App. LEXIS 7242, at *3. The Court finds that Mr. De Olivas's advice and representations were not based on any sincere trial strategy. In fact, Mr. De Olivas appears to have had no basis at all for giving that advice and making those representations.

---

[3] At the hearing the Court was presented with conflicting testimony regarding whether Mr. De Olivas had ever represented to Petitioner that he could obtain a 24- or 30-month offer from the Government. The Court finds Petitioner's testimony credible and does not find credible Mr. De Olivas's testimony that he never made that representation to Petitioner. Petitioner's testimony is corroborated by the January 14, 2008 email where Mr. De Olivas requested a 30-month offer from the Government, specifically Mr. Miller. [Def's Tr. Ex. I.] It is also corroborated by Mr. Garrison's testimony in his declaration stating that the first time he met with Petitioner, Petitioner told him that Mr. De Olivas advised him to reject the 48-month fast track offer and represented to Petitioner that he could obtain a 24-month sentence for him. [Doc. No. 58-1, Declaration of Timothy R. Garrison ¶ 5.]

Mr. De Olivas was admitted to practice in this District on October 30, 2007 and was accepted to the California bar only a few months earlier in June 2007. Petitioner was only Mr. De Olivas's sixth client in this District, and Mr. De Olivas only first appeared as an attorney in a § 1326 criminal case in this District on December 3, 2007. Mr. De Olivas admitted that prior to that date, he had never negotiated a plea deal, had never participated in a sentencing hearing, and had never tried a case involving a § 1326 violation. Therefore, at the time Mr. De Olivas represented to Petitioner that he could obtain a 24- or 30-month offer, Mr. De Olivas had no experience at all in negotiating plea deals and he had no basis for making that representation. In addition, when testifying at the hearing, Mr. De Olivas was unable to explain how once Petitioner was charged with a § 1326 violation, he could obtain a 30-month offer under the sentencing guidelines. Indeed, Mr. De Olivas did not appear to have even a basic understanding of how the sentencing guidelines work. Also, the Ninth Circuit instructed that these facts "must be considered in combination with a petition filed by the Standing Committee on Discipline for the Southern District ('disciplinary petition') that led to De Olivas's suspension during the pendency of Soto-Lopez's sentencing, and which details De Olivas's systematic unprofessional conduct in the Southern District of California." Soto-Lopez, 2012 U.S. App. LEXIS 7242, at *6. Finally, a legal expert, Ms. Norma Aguilar, testified at the hearing that based on her review of Petitioner's criminal history, there is no way the Government in 2007 would have offered Petitioner a 30-month plea agreement. Therefore, it is clear that Mr. De Olivas's representation that he could obtain a 24- or 30-month offer was not based on any legitimate trial strategy and his representation was so incorrect and so insufficient that it undermined petitioner's ability to make an intelligent decision about whether to accept the 48-month fast track offer. See Turner, 281 F.3d at 881.

The primary evidence the Government relies on to show that Mr. De Olivas's performance was not deficient are two cases: United States v. Bello-Baena, No. 07-cr-2596-LAB and United States v. Gonzalez-Zotelo, 556 F.3d 736 (9th Cir. 2009). In Bello-Baena, Mr. De Olivas represented an aggravated felon charged with violation of § 1326 and was able to obtain a 30-month sentence following a bench trial. In Gonzalez-Zotelo, the Ninth Circuit reversed Judge Burn's decision to impose a 30-month sentence on an aggravated felon charged with violation of §

1326 following a bench trial. However, these cases are not persuasive. The defendants in those cases were each able to obtain a 30-month sentence following a bench trial. Petitioner's claim is not that Mr. De Olivas misrepresented that he could obtain a 30-month sentence from the Court. Petitioner's claim is that Mr. De Olivas misrepresented that he could obtain a 30-month offer from the Government. Therefore, these two cases are not relevant to the issues in this case.

Moreover, even if Mr. De Olivas had merely represented to Petitioner that he could obtain a 30-month sentence, these cases would still be unpersuasive. Because the Bello-Baena and Gonzalez-Zotelo sentencings occurred after Mr. De Olivas had made the representation to Petitioner, it is clear that Mr. De Olivas did not rely on the two cases in making that representation. At the hearing, the Government could not point to any training, experience, or knowledge that Mr. De Olivas possessed when he made the representation to Petitioner showing that the representation that he could obtain a 24- or 30-month offer was based on a legitimate trial strategy and not a complete fabrication by Mr. De Olivas in order to obtain a fee from Petitioner.[4]

Petitioner has also met his burden of proof with respect to the prejudice prong of the Strickland test. To establish prejudice, Petitioner must show there is a reasonable probability he would have accepted the plea, the prosecution would not have withdrawn it in light of intervening circumstances, the Court would have accepted its terms, and the sentence under the offer's terms would have been less severe than the sentence that was in imposed. Lafler, 132 S. Ct. at 1385.

Petitioner would have accepted the plea agreement if it were not for Mr. De Olivas's advice and representations. Petitioner testified to this fact, and Ms. Baylor corroborated this in her declaration. [Doc. No. 58-1, Baylor Decl. ¶ 5.] Indeed, the record shows Petitioner was taking steps toward accepting the plea agreement prior to substituting Mr. De Olivas as his counsel. Consistent with the fast track plea agreement, Petitioner waived indictment, was charged by information with three counts of violating § 1325, and had a change of plea hearing set for November 29, 2007. [Doc. No. 45-1, Ex. 1 [Doc. Nos. 6-8]; Def.'s Tr. Ex. A.]

---

[4] The Court recognizes that it appears Mr. De Olivas never obtained a fee for his services in representing Petitioner. However, that does not mean that Mr. De Olivas did not expect to receive a fee when he first met Petitioner and represented to him that he could obtain a 24- or 30-month sentence.

There is no evidence of any intervening circumstances that would have caused the Government to withdraw the plea agreement prior to the scheduled November 29, 2007 change of plea hearing. In addition, there is a reasonable probability that the Court would have accepted the terms of the fast track plea agreement had the plea agreement been presented to the Court.

Finally, it is clear that the sentence under the fast track plea agreement would have been less severe than the sentence that was imposed. The Court sentenced Petitioner to 77 months in custody. [Doc. No. 23.] Under the fast track plea agreement, the statutory maximum the Court could have sentenced Petitioner to was 54 months for the three § 1325 charges. Soto-Lopez, 2012 U.S. App. LEXIS 7242, at *5.

At the hearing, the Government argued that Petitioner failed to prove prejudice. The Government argued the evidence presented at the hearing showed that Petitioner did not meet with Mr. De Olivas prior to Petitioner's November 26, 2007 meeting with Ms. Baylor where he told her the 48-month offer was too much time and he wanted new counsel. The Government argued, therefore, that this shows the decision to reject the fast track plea agreement was made solely by Petitioner and was not based on any advice or representations by Mr. De Olivas.

However, Petitioner testified that he spoke with Mr. De Olivas prior to the November 26, 2007 meeting with Ms. Baylor, and Mr. De Olivas had represented to him that he could obtain a 24- or 30-month offer. Petitioner also testified that he rejected the fast track plea agreement only because of the representation and Mr. De Olivas's advice that he reject the offer. The Court finds Petitioner's testimony credible and does not find credible Mr. De Olivas's testimony that he never advised Petitioner to reject the deal or that he never told Petitioner that he could obtain a 24- or 30-month offer, and that Petitioner had already rejected the deal when they first met.

The only evidence the Government relies on to show that Petitioner and Mr. De Olivas never met prior to the November 26, 2007 meeting is an MCC log book.[5] The Government argues that the log book shows that Mr. De Olivas never met Petitioner prior to November 26, 2007 because Petitioner was housed on the 12th floor of the MCC and there is no entry by Mr. De Olivas in the log book stating that Mr. De Olivas visited the 12th floor prior to that date. However, the

---

[5] At the hearing, Mr. De Olivas could not remember the date when he first met Petitioner.

1  Court finds this evidence insufficient to show that Mr. De Olivas never spoke to Petitioner prior to
2  Petitioner's November 26, 2007 meeting with Ms. Baylor.  The log book shows that Mr. De Olivas
3  visited the MCC several times from November 15, 2007 to November 26, 2007.  [Def.'s Tr. Ex.
4  E.][6]  The custodian of the log book, Kirk Purkiser, testified that despite what is entered in the log
5  book, once an attorney enters the MCC, the attorney can access any floor.  Therefore, even if the
6  log book does not have any entries for the 12th floor, Mr. De Olivas could have signed in to visit
7  an inmate on a different floor, entered the MCC, and then visited the 12th floor once in the
8  elevator.[7]  Accordingly, the Court gives the log book little to no weight and finds it insufficient to
9  rebut Petitioner's testimony that he met Mr. De Olivas prior to the November 26, 2007 meeting
10 with Ms. Baylor, and that Mr. De Olivas represented to him he could obtain a 24- or 30-month
11 offer.

       In sum, Petitioner has proven by a preponderance of the evidence that Mr. De Olivas
provided ineffective assistance of counsel in violation of Petitioner's Sixth Amendment rights.
Therefore, the Court **GRANTS** Petitioner's motion to vacate his conviction and sentence pursuant
to 28 U.S.C. § 2255.  The Ninth Circuit instructed that in the event this Court grants Petitioner's
motion,

> "the correct remedy in these circumstances . . . is to order the [Government] to reoffer the plea agreement.  Presuming respondent accepts the offer, the [district] court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence . . . undisturbed."

Soto-Lopez, 2012 U.S. App. LEXIS 7242, at *10 (quoting Lafler, 132 S. Ct. at 1391).

///
///
///
///

---

[6] Specifically, there are entries for Mr. De Olivas on November 15th, November 20th, November 23rd, and November 26th of 2007.  [Def.'s Tr. Ex. E.]

[7] Indeed, it is reasonable for the Court to suspect that Mr. De Olivas did not strictly comply with MCC procedures as other evidence in the record shows that Mr. De Olivas was later barred from entering the MCC for 30 days for failing to follow MCC procedures.  [Doc. No. 38 Ex. B.]

Accordingly, the Court **ORDERS** the Government to reoffer the original 48-month fast track plea agreement within fourteen (14) days after the date this Order is filed, so Petitioner may accept that offer. The Court sets this matter for a change of plea hearing on **Monday, August 27, 2012** at **11:00 a.m.**

**IT IS SO ORDERED.**

**Dated:** August 1, 2012

*Irma E. Gonzalez*
**IRMA E. GONZALEZ**
**United States District Judge**